**FILED**
**Oct 19, 2021**
**02:12 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT GRAY

| | | |
|---|---|---|
| **DANIEL TEDFORD,** | ) | **Docket No.: 2020-02-0446** |
| **Employee,** | ) | |
| **v.** | ) | |
| **ENERGY SAVERS, LLC,** | ) | **State File No.: 4141-2020** |
| **Employer,** | ) | |
| **And** | ) | |
| **AMERICAN ZURICH** | ) | **Judge Brian K. Addington** |
| **INSURANCE,** | ) | |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

Daniel Tedford alleged he suffered serious injuries in two separate events. The first occurred when he partially fell through a ceiling; months later, a second injury occurred while he was operating a foam spray gun. Energy Savers initially provided medical and temporary disability benefits, but it later denied the claim, asserting that his injuries had resolved, or his statute of limitations had run. Mr. Tedford filed a request for expedited hearing, and Energy Savers defended its denial. After considering the evidence presented at the October 12, 2021 hearing, the Court holds that Mr. Tedford is not likely to succeed at a hearing on the merits in proving his entitlement to benefits.

### Claim History

Sometime in October 2019, while performing his job as a lead foam sprayer, Mr. Tedford partially fell through a ceiling. He caught himself on the rafters and did not fall to the floor below. He felt no pain from the fall and notified his employer of the ceiling damage.

Weeks later, Mr. Tedford began feeling pain in his right arm, which he attributed to overwork. He continued working for several months and alleviated the pain with over-the-counter medications.

Mr. Tedford claimed that his arm pain changed on January 3, 2020, when he noticed that his pain intensified as he sprayed overhead. The pain decreased over the weekend but

1

returned on January 6 while spraying insulation at a jobsite. He went to the emergency room, complaining of neck pain that started at work on January 3. The providers did not note any pain in his arms and diagnosed a headache and arthritis.

Mr. Tedford disagreed with that diagnosis and went to a walk-in clinic the next day. The provider there found that he had neck tenderness, assessed a muscle spasm and/or sprain, and recommended that he share heavy work with younger co-workers.

After this diagnosis and recommendation, Mr. Tedford called his boss. During their discussion, he came to believe that Energy Savers had no light-duty work for him and would no longer employ him. On January 23, he filed a Petition for Benefit Determination.

After filing the petition, Energy Savers provided a panel of physicians, and Mr. Tedford came under the care of providers at Ballad Occupational Medicine on February 1. There, he told a nurse practitioner about numbness and pain in his shoulder and neck and stated that he injured his neck spraying overhead. He discussed his treatment at the emergency room and walk-in clinic, and that he had been treated by a chiropractor.[1] The assessment was a right-shoulder strain from repetitive overhead spraying. At this point, Energy Savers authorized Mr. Tedford to see Dr. Janice Schweitzer.

Dr. Schweitzer took his history and examined him on February 3. She recorded that Mr. Tedford denied any symptoms before the spraying incident. He did not tell her about his fall through the ceiling. He complained of a pinch in his neck, arm numbness, and clavicle pain. Dr. Schweitzer assessed a shoulder/arm strain, ligament sprain in the cervical spine, and overexertion from repetitive movements related to his work. She restricted him from use of his shoulders or overhead work and placed a five-pound lifting, pushing, and pulling restriction.

Mr. Tedford could not find work with those restrictions, so he returned on February 6 to ask Dr. Schweitzer to revise them, so that he could work at Lowe's. He told her he continued to have neck pain but needed to work, so she decreased his restrictions to ten pounds based on his assertions that he could tolerate this activity. Dr. Schweitzer also ordered diagnostic testing.

Mr. Tedford returned to Dr. Schweitzer in March after the testing. Dr. Schweitzer wrote that the MRI results were not remarkable but added cervical displacement to her assessment. She requested a shoulder MRI, which suggested mild tendon fraying and a probable miniscule tear. As a result of the testing, Energy Savers offered Mr. Tedford a panel of physicians for his neck and shoulder.[2] He chose Dr. Jodi Helms for his neck and Dr. Thomas Gill for his shoulder.

He saw Dr. Helms first on April 9, reporting that he experienced pain radiating down into his right middle finger before January 3 that worsened after the incident. He

---

[1] The parties did not supply the chiropractor's notes.
[2] Energy Savers also paid temporary disability benefits for a while.

2

complained of shoulder and neck pain during the examination. Dr. Helms did not record that he fell at work in October 2019. Dr. Helms reviewed the MRI results and determined his cervical MRI only revealed a minor degenerative bulge. He recommended an evaluation of Mr. Tedford's shoulder but placed him at maximum medical improvement with no impairment for his neck.

He then saw Dr. Gill on April 21. Based on Mr. Tedford's history, Dr. Gill determined that he had overused his shoulder. He diagnosed tendonitis and a strain and continued the ten-pound restrictions that Dr. Schweitzer recommended. He injected Mr. Tedford's shoulder and ordered physical therapy.

Dr. Gill saw him over the following months but did not find anything significant with his shoulder. He responded to the insurance carrier about causation by checking a box that Mr. Tedford's work was more than 50% the cause of his right bicep tendonitis and right rotator cuff strain. Dr. Gill also stated in his notes that Mr. Tedford needed to see a physician for his neck pain and a second opinion for his shoulder. So, Energy Savers gave him a second opinion with Dr. Richard Duncan for his neck and Dr. Larry Waldrop for his shoulder.

Dr. Duncan examined Mr. Tedford in August and reviewed the MRI. He could not identify anything that would cause Mr. Tedford's neck pain. He released him at maximum medical improvement without restrictions or impairment that same day.

Mr. Tedford next saw Dr. Waldrop in October. Dr. Waldrop noted that he was reaching at work and felt a pop. Dr. Waldrop suspected a labrum tear and recommended surgery, which was set for late October.

During this whole process, Mr. Tedford said he felt like providers were not listening to him or treating his complaints correctly. However, Mr. Tedford testified he violated his restrictions at Lowe's and quit his job because he could not continue to work there without violating his restrictions, but the records do not document him telling Dr. Schweitzer that information. Further, Dr. Schweitzer found him to be "a somewhat vague historian." He also failed to tell Dr. Gill about his 2019 fall at work. Yet, he wanted everyone to know that not only his right shoulder and neck hurt but also his left shoulder from the fall. He maintained he did not receive sufficient treatment because every provider was focused on his right arm. He explained that telling everyone about the October 2019 fall and them documenting it would help clear the confusion, and he believed then he would get the treatment he needs.

So, the surgery was canceled, and a return appointment was set with Dr. Waldrop. Dr. Waldrop noted the fall through the ceiling and Mr. Tedford's left-shoulder pain. Based on their conversation and his examination, Dr. Waldrop wrote that Mr. Tedford had no

shoulder pain before the January 2020 injury and that he suffered bilateral shoulder pain since that date.[3]  He recommended surgery, which was scheduled for December.

Energy Savers delayed surgery to obtain a record review by Dr. Christopher Shaver. Dr. Shaver reviewed all records except those for chiropractic treatment and found no clear evidence of a right labral tear.  He also concluded that any tear that did exist was caused by the October 2019 fall and not primarily related to the spraying incident in January 2020. He dismissed the idea that Mr. Tedford's left-shoulder problems were related to his work because Mr. Tedford did not mention them for over ten months.

Based on Dr. Shaver's opinions, Energy Savers denied the claim.  Specifically, it concluded that Mr. Tedford's claim, including his need for treatment, related to the October 2019 incident and, for that reason, the statute of limitations expired before Mr. Tedford filed his petition.  After the denial, Mr. Tedford filed a new petition on December 28, 2020, again alleging the January injury dates.

He also started treating on his own for pain management with Dr. John Testerman after the denial.  Dr. Testerman provided an opinion that Mr. Tedford fell through a roof spraying insulation, but he listed the dates of injury as January 3 and 6, 2020.  He stated, to a reasonable degree of medical certainty, that Mr. Tedford's shoulder injury and cervical problems are the result of an on-the-job injury.

During the hearing, Mr. Tedford requested payment for past medical expenses and a new physician panel.  He also requested temporary benefits for various periods, but he did not provide the exact dates that he was off work.  He also did not state whether he worked with restrictions or the exact amounts he earned while working on restrictions.

Energy Savers requested that Mr. Tedford's claim be denied for expiration of the statute of limitations.  It additionally argued that any injuries caused by the January 2020 incidents had resolved.

### Findings of Fact and Conclusions of Law

At this Expedited Hearing, Mr. Tedford must show he would likely prevail at a hearing on the merits regarding his requests for medical and temporary disability benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2020).

To be eligible for medical benefits, Mr. Tedford must prove that he suffered an injury that primarily arose out of and in the course and scope of his employment and that his need for medical treatment is related to that injury.  Tenn. Code Ann. § 50-6-102(14). To be eligible for temporary disability benefits, he must prove that his work injury caused him to miss work or earn less than his average weekly wage.  Tenn. Code Ann. § 50-6-

---

[3] Mr. Tedford testified, however, that he had experienced pain before the January incidents.

207(1)-(2).  He must also show that he filed his claim within the one-year statute of limitations.  *See* Tenn. Code. Ann. § 50-6-203(b).

Considering these requirements, this is a complex case involving an alleged acute incident in October 2019 and a repetitive incident culminating in pain while spraying overhead in January 2020.  Except in the most obvious, simple and routine cases, the injured worker must establish by expert medical evidence the causal relationship between the claimed injury and the employment activity.  *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).  So, the Court looks to the expert medical evidence to determine if Mr. Tedford proved the causal relationship between his job and his injury and the dates the injuries occurred.  The Court finds he did not prove this.

Rule 703 of the Tennessee Rules of Evidence directs trial courts to "disallow [expert] testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness."  Although no doctor testified, the records presented contained several inconsistent facts, statements, and opinions.  No physician had an accurate history of Mr. Tedford's injuries concerning what happened or when.  Further, no doctor seemed to consider or even know that Mr. Tedford violated his restrictions while working for Lowe's.  Because of the many inaccuracies in the factual record recorded by the physicians, the Court gives little weight to their opinions.  *See generally Jones v. CVS Pharm., Inc.*, No. E2013-02451-SC-R3-WC, 2014 Tenn. LEXIS 926, at *10 (Tenn. Workers' Comp. Panel Nov. 20, 2014).

Mr. Tedford's testimony did not help his case.  The Court finds he was a poor historian.  He often could not remember dates or exact places, and he often generalized.  He conflated facts with his beliefs and opinions, which have changed over time.  He also could not understand why providers did not record the history of his fall when he believed he repeatedly told them, but even Dr. Schweitzer found him to be a vague historian.

Regardless of his testimony, the Court observed Mr. Tedford and noticed he appeared to be in pain.  The Court also commends Mr. Tedford for seeking and finding work while in pain.  However, the Court at this time cannot hold that he is likely to succeed in proving entitlement to medical and temporary disability benefits at a hearing on the merits because he has not presented an accurate history to his providers so they can give correct causation opinions.  Further, Mr. Tedford's inability to prove the date of his injury precludes the Court's ability to determine whether he filed a petition within the statute of limitations.

**IT IS, THEREFORE, ORDERED** as follows:

1.  Mr. Tedford's request for temporary disability and medical benefits is denied at this time.

2. This case is set for a Status Hearing on **December 3, 2021, at 10:00 a.m.** Eastern Time. You must dial **855-543-5044** to participate. Failure to call may result in a determination of the issues without your participation.

**ENTERED October 19, 2021.**

*Brian K. Addington*
_____
**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Affidavit
2. Wage Statement
3. Physician Panel
4. Notice of Denial
5. Designated Medical Record with Table of Contents
6. Dr. Shaver's records
7. First Report of Injury
8. Photo
9. Email
10. Text message

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of filing of medical records
5. Agreed order to continue Expedited Hearing
6. Employer's Expedited Hearing Memorandum
7. Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a correct copy of this Order was sent to the recipients below as indicated on October 19, 2021.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Josh Hoeppner, Employee's Attorney | | | X | josh@hoeppnerlaw.com |
| Chris Brown, Employer's Attorney | | | X | chris.brown@leitnerfirm.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

7



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*